Our next case, our last case on the docket today is 5-25-0508 in re Commitment of Freddie Miller. I said this earlier, I'm about 05 with getting names correct today, so I'm going to let you state your name because I don't want to butcher it. Okay, it's Rachel Michaloshevsky. Thank you so much. We've got Ms. Polinski here, she's been here before. So, are you ready to proceed? Go right ahead. Good afternoon, may it please the court, counsel. My name is Donna Polinski, I was appointed to represent Mr. Miller in this appeal after being found sexually violent by the Circuit Court of St. Clair County. The issues before, the two issues before us today are whether the state proved beyond a reasonable doubt the third element in section 207-5, parenthesis F. And number two, whether the trial court erred in committing Mr. Miller to the treatment and detention facility, which I'll call TDF, on conditional release, or CR. We use a lot of abbreviations in these cases in trial court. The first two elements I won't go into detail because those were proven, those were established. That is that Mr. Miller has an underlying criminal offense, I'm sorry, criminal conviction under the SVP Act. And number two, whether he has an underlying mental health disorder as set forth in the Act. The third element is the question here, whether that mental disorder makes it substantially probable that Mr. Miller will commit future acts of sexual violence. We believe the state failed to prove that he was substantially probable to engage in those future acts of sexual violence. Our Supreme Court has found that a respondent cannot be involuntarily committed based on past conduct, only present conduct or what they presently suffer from. He must presently suffer from a mental disorder and, again, that disorder must make him substantially probable to reoffend or commit other acts of sexual violence. We don't dispute that he presently suffers from a mental disorder. That was established by all three experts that testified in this trial. But if the state cannot prove this or if the evidence is insufficient to find that the respondent is more likely than not or substantially probable to commit future acts of sexual violence, holding him would be basically punishing him for past conduct. In this case, there were three experts. But first, before I get to the testimony, I'd like to touch on what substantially probable means. In trying these cases in the circuit court level, we try to establish what substantially probable means. As you are well aware, we can't use a percentage, just like with beyond a reasonable doubt, which the state must prove beyond a reasonable doubt in these cases whether they fit the criteria under the Act. We can't put a percentage on substantially probable. But what our courts have done is they have indicated that substantially probable means much more likely than not. Not more likely, not I'm more likely to have steak and chicken on any given night, much more likely. That word much is huge because that means that's more than just maybe, maybe not. I'm much more likely to get a good night's sleep tonight than I did last night because I don't have to come back and argue tomorrow. That word is huge, much. Focusing on the state's brief and what I've just indicated to you now, I believe their argument fails. Their arguments can be boiled down, I think, to two things. One, because Dr. Nicolai, the expert that testified that Mr. Miller did meet the criteria, because Dr. Nicolai says it's true, so it is, without looking at what the other two experts say. And apparently the trial court did, too. The crux of that argument, though, is basically listen to what my expert, listen to what Dr. Nicolai said. Don't pay any attention to the two other experts behind the curtain. Don't think about what they said. Because if you do, I don't believe you meet the standard of much more likely than not, nor beyond a reasonable doubt. It should be noted that in the trial court's order, there wasn't a, the trial, this was a bench trial, so there wasn't a jury verdict. The trial court didn't indicate whether she did or did not credit the other two experts' testimony, whether she found that not something that she could consider. It was just a summary of what the doctors testified to, what they found and what they opined, and then that she found beyond a reasonable doubt that he met the criteria. The state cites Inright Commitment of White around page 22 of their brief. They state that the evidence is sufficient for a finding of SVP, even though the defense expert disagreed with both of the state's experts. White dealt with an individual. He not only did he score much higher, a 5 versus 8 on actuarials, which I'll get to in a second, but it was also two state experts that stated or testified that he was much more likely to commit future acts of sexual violence, and one expert that said he was not. Isn't that the same here and the opposite? I mean, couldn't you say that the evidence was insufficient for finding Mr. Miller a sexually violent person, even though the state's experts said he was? To me, that's reasonable doubt. And to me, that doesn't get you past the hurdle of whether or not he's much more likely than not to commit future acts of sexual violence. And I also, it should be noted here, I'm sure that the court is well aware that in these cases, prior to someone's release from prison, if they've had an underlying criminal offense under the act, they are evaluated by a psychologist from Wexford Health. But it's a psychologist that is deemed an expert in this field. If that person, that expert finds that the individual meets the criteria, the individual is held over for a probable cause hearing. Basically, that's the first step. At the probable cause hearing, the only testimony is of that one expert. If the trial court finds that that one expert is credible and determines that the individual should be held over, that person then is held over at the treatment and detention facility, the TDF, until trial. At that point, the state has a second expert that is, it's not technically appointed, but under the act, they get another expert. That expert then does the same evaluation, or at least similar, have the same credentials, et cetera, and they do an evaluation of the individual and they do these reports. Once that report comes, then the defense gets, or the respondent gets an expert appointed on his behalf to do an evaluation and the exact same thing. So all three experts in these cases do the same thing. The conclusions that they come to, all of the cases I believe that I cited and the cases that the state cited in her brief, except for one case where all two experts stated that the individual was sexually violent and one expert says that they're not. There was one case that was cited, and I have to look it up, that was one versus one. There were only two experts that testified. The state argues here that Dr., and what I should say is that Dr. Cusio, who testified that Mr. Miller didn't meet the criteria, was not an expert for respondent. Of course, the respondent's attorney called him to testify because his opinion was that Mr. Miller did not meet the criteria. The state argues that Dr. Nicolai thoroughly explained the basis of her opinion, and therefore I guess that means it's beyond a reasonable doubt that they've proven their case. But so did Drs. Cusio and Rozelle. They both thoroughly explained the basis for their opinion. They all testified pretty much the same. The order's the same. They testify as to their qualifications as an expert. If they are deemed an expert by the court, then we move forward to what their procedure is in evaluating these after they testify the number of times they've testified in court. All of them did the same thing. They all reviewed the criminal records. They all reviewed the background of the individual. They all reviewed the DOC records, TDF records, and then made their evaluation based on all of that information. They all scored the same actuarials. They scored what's called some use different ones in addition to the static 99Rs, what the main actuarial instrument is. That scores the person on the risk of recidivism based on 10 to 12 criteria that they go through, number of partners, number of criminal offenses that are not sexually violent in nature, whether they're male or female victims, et cetera. All three experts in this case scored Mr. Miller the same. They all scored him a 5 out of 12 on the actuarials. They all did the review of his past criminal history, and they all diagnosed him with pedophilic disorder. The state then says that the evidence sufficed because Nikolai testified about the requirements of the SBP Act and concluded that respondent met them. She also opined his mental disorder makes him substantially probable to engage in acts of sexual violence. Then the state argues that the expert's testimony, meaning Dr. Nikolai, when viewed in context, plainly linked respondent's substantial probability to reoffend to his mental disorders. The same, again, and the opposite can be said for Drs. Kuzia and Rozelle in their testimony. When viewed in context, they did not link respondent's mental disorder to a substantial probability to reoffend if released. Both Dr. Kuzia and Dr. Rozelle did testify as to the requirements of the act. Again, I'm not going to go through all of the things that I've already indicated that they do. And, in fact, Dr. Kuzio testified that Mr. Miller's mental disorder and reoffending was too big a leap, too big a leap to say that just because of his mental disability he was going to reoffend. Dr. Rozelle indicated that he also he didn't say too big a leap, but he indicated that there was not a substantial likelihood or it was not much more likely than not that he would reoffend because the offenses happened 30 years prior. There was one conviction. One case was dismissed. An 82 case, 92 case was dismissed. A 2005 case was he was convicted on. And the time, there are other factors in those actuarials that would apply the fact that he was 30 years older. People can change. The two doctors, Dr. Kuzia and Dr. Rozelle, did testify quite a bit about Mr. Miller's antisocial personality disorder, which was the second diagnosis that all three doctors gave to Mr. Miller. All three experts went through those things, and Dr. Nicolai indicated that that would make him more probable to commit acts of sexual violence versus both Dr. Kuzia and Dr. Rozelle who indicated that, oh, I'm sorry, I thought you had a question, that both of those doctors indicated that the dynamic risk factors present with Mr. Miller did not make it more likely that he would offend. The dynamic risk factors are in addition to those actuarial scores based on things that can change. The actuarials are on things that cannot change what's happened in the past. The dynamic risk factors are things that can change. For instance, 30 years have gone by, treatment, medical conditions, things like that. Well, let me ask this, counsel, because obviously the court had three witnesses, three expert witnesses, talk about how they came to their findings, their actuarial tables, all these dynamic risks. The court had all of that, and as in any case where you have, I would say, like dueling experts, it comes down to the trial court making the finding, what they find to be credible, what might not be credible, and making that decision, which is what the trial court did given all of this information. And the standard of review, I believe, is the trial court's findings are given deference when making these credibility and these assessments given these experts, correct? Correct, yes. So how do you get past that? Well, that is, it's not retrying the case or rehearing the evidence. It's, I find it hard to explain, it's in my head, but I find it hard to explain, because you've got, you do have the trial court that is sitting there listening to the evidence. But in this particular case, the judge did not go through and indicate what was wrong, for lack of a better way to put it, what was wrong with Dr. Rozell and Dr. Kuzia. They were not, they were just as much an expert as Dr. Nikolai. They were not, it appears that their testimony was just pushed to the side and not considered whatsoever. And I believe if you have three experts and two say one thing and one says another, I'm not sure how you get past reasonable doubt there. And I believe that the trial counsel in his closing argument summed it up the best when he said, two experts saying that Miller did not meet the criteria and one saying he does, is the definition of reasonable doubt. I would go further. When is it reasonable doubt? If it's not two versus one, is it three? Is it ten? Do you have to have 20 experts saying he's not and one saying he is for you to say, I think we've got reasonable doubt here. In this case, the two respondent experts, Kuzia and Rozell, both said on the static 99R, he was a five, one said he's a four, but maybe five was more accurate. Five puts him in the above average. Also, as the state points out on page 11 of their brief, on cross-examination, Kuzia said he did not find dynamic risk factors present, but then he admitted the fact that the defendant had between one and 200 sexual partners, he had various sexually transmitted diseases, he exchanged money for sex, that he frequented strip clubs, that he had extensive criminal history. He did not factor those as dynamic risk factors, but the court obviously did. More in line with Dr. Nicolai, so does that not? Well, Dr. Rozell answered that. I can't answer to what Dr. Kuzia was thinking in that. He did, I believe, say in his testimony, having a sexual appetite, does that make one sexually deviant? It was with the deviance part. I believe that was what you're talking about there. What is a sexual appetite? When does it make you deviant? Dr. Nicolai felt that it did. Dr. Kuzia believed it didn't. Dr. Rozell, he considered that a dynamic risk factor, but he indicated that that was 30 years ago and gave that not as much credit as Dr. Nicolai did. I'm out of time. Thank you. I would request that the court reverse the trial court's decision, and I didn't get the argument to, but. And I'll take your time for rebuttal. Yes. If you have any other report, we'll let you go. Any questions? No, thank you. No other questions. Thank you. Go ahead. Good afternoon. I'm Assistant Attorney General Rachel Michalczewski on behalf of the people. The court should affirm the trial court's judgment, both because the evidence here was sufficient and because the court did not abuse its discretion when entering the dispositional order in this case. To spend most of my time on the first argument, appellant makes the sufficiency of the evidence challenge. As Your Honor pointed out, on appeal, the standard of review is in the light most favorable to the people. And here, that basically controls the argument for this part of the challenge that respondent is bringing. The court has to view the evidence in the light most favorable to the state when evaluating whether it was sufficient to demonstrate that respondent was a sexually violent person. And just skipping to the third prong, the question of whether or not it was substantially probable that respondent will engage with acts of sexual violence in the future, the trial court could rely on Dr. Dubber-Nicholas' expert opinion here, because it was a credible opinion and it took into account not just the respondent's criminal history, but the risk assessment and dynamic factors that this court has pointed out. I think the other thing that's important to note is there's not a lot of daylight between the experts themselves. They reach similar opinions with the first two prongs. And even in the question about the respondent's criminal history and the scoring on the risk assessment, they draw similar conclusions. Namely, they score him a 5 on a set of 99R, which puts a respondent in an above-average risk category, meaning that he is almost three times more likely to sexually re-offend compared to other sex offenders. And Dr. Nicholas also, in her opinion, considered this history since the early 90s. Respondent has not spent very much time outside of prison. When he has, he's been repeatedly abusing young girls, or he's been committing robberies and burglaries, which allowed Dr. Nicholas to diagnose him with pedophilic disorder and also antisocial personality disorder, something that all the other experts agreed with. Opposing counsel stresses that the standard here is that it's substantially probable that he will re-offend sexually in the future, and that means that it's much more likely than not. And the state doesn't disagree with that as the standard. That is the correct standard. But as even the respondent acknowledges in his brief, there's no mathematical formula for what that means. Rather, it's a holistic examination of each respondent. And here, the evidence is very strong, both from the diagnosis that the respondent had, as well as the risk assessment and the dynamic factors here. Here, Dr. Nicholas found at least six different factors that elevated his likelihood of risk, something that Dr. Kuzia agreed with three of those factors. One other thing that's important about the standard review at this point in time is that it's not just a matter of counting how many expert witnesses say one thing versus another. The appellate court here does not re-weigh the evidence. Rather, they rely on the credibility determinations the trial court had. And even if you have an expert witness that says one thing and two that say the opposite, it doesn't automatically mean that the evidence is insufficient, especially not on appeal when the standard is the light most favorable to the people. Finally, so based off of all of these three sources, the diagnosis, the actuarial scores, the dynamic risk factors, Dr. Nicolai was able to conclude that a respondent was substantially probable to commit future acts of sexual violence. And therefore, viewing evidence in the light most favorable to the people, the people's evidence here was sufficient to determine that respondent was an STP. I'm going to briefly turn to the commitment order. There, the trial court did not abuse its discretion either in ordering secure treatment. Both experts considered the factors listed out in the STP Act that a court needed to consider. First, the behavior that was the basis of the allegation of the petition, the person's mental history and present mental condition, and the available arrangements to participation in necessary treatment. The respondent here argues that the trial court failed to consider his present condition, but that wasn't the case. They heard testimony from both experts, and the state's expert testified that the respondent had not yet participated in any treatment and currently was resistant to participating in treatment in the TDS. He even stated that he would not participate in treatment, and because he had not begun treatment, he had not yet understood his cycles or triggers to be successful on conditional release. Respondent also argues that the trial court failed to consider community arrangements, but there's also no evidence of that in the record. Therefore, the court did not abuse its discretion in committing respondent to secure care. And therefore, this court should affirm the trial court's order. Again, like I said, in the scheme of life, I want to make sure you're okay. Yeah, I am fine. I'm just a little embarrassed now. Yeah, do not feel that way. Okay. So, to conclude my remarks on the dispositional order aspect, respondent here argues that the trial court failed to consider different community arrangements, but there's no evidence in the record that the trial court failed to consider that type of evidence. They heard testimony recommending secure treatment in CR, and the trial court from the state's expert is just more convincing. That's the trial court's prerogative. The trial court's testimony undercut the possibility of conditional release, and trial court, in fact, referenced the possibility of him moving to a different state. Thank you for your patience. I'd like to turn back to the argument just briefly about the commitment order. The trial court did not abuse its discretion in ordering secure treatment because the SECF requires the court to consider three things, the behavior that was the basis of the allegation of the petition, the person's mental history of present mental condition, and available arrangements of participation necessary for treatment. And here, the state's expert applied all these factors and testified that respondent had not yet participated in any treatment, he had not committed the offenses, he had not yet understood his cycle or triggers to be successful in conditional release, and he had history of road breaking. And all of these factors made it difficult to participate in treatment outside of a secure facility. And the trial court didn't abuse its discretion in crediting that expert. Respondent here argues in this brief that the trial court failed to consider his present condition. There's no evidence of that in the record. The court's own testimony from respondent as well as both experts on his present mental condition. And the fact that the older instances were referenced in the hearing doesn't violate the statute or the consideration of those statutory factors. The statute itself requires the judge also consider the person's mental history as well as their present condition. And any arguments that mental history got too much weight or that one expert's opinion got more weight than another is also improper because appellate courts cannot re-weigh the evidence. Respondent also argues that the trial court failed to consider community arrangements, but there's also no evidence in the record of that. The court heard the dispositional hearing testimony both recommending secure treatment and recommending CR, and the trial court found the state's experts to be more convincing. That's the trial court's prerogative. In fact, it wasn't just the state's experts that might have drawn this conclusion. Respondent testified, and his testimony undercut a possibility of conditional release because he had referenced moving to another state as being possible with conditions in a conditional release. And he stated that he's not doing treatment, he would not do treatment in a TDF, and would prefer to do treatment on the slide on conditional release. These remarks will combine with the state's experts' opinion, likely made the court doubt that community arrangements would be effective. Therefore, the court did not use its discretion when it committed Respondent to secure care. In conclusion, this court should affirm the circuit court's dispositional order, as well as the judgment that the Respondent is an SCP. Thank you very much. Thank you, counsel. Any questions? Justice Clark? No questions. Justice Long? No questions. All right. Thank you. Yes, absolutely. Your Honor, with respect to the first argument, Dr. Aldrich, as counsel indicated, the actuaries were all sort of the same. I believe there was a statement made that initially what Dr. Rizzo and Dr. Cruz used went lower, but based on the record, there's great detail on the events of the Jones case, or the Ingram case, where the mom was a cousin, or maybe a second cousin, and whether they were familial members or not, because that determines a point or two on the actuarials. If it's a non-relative, there's less likely recidivism in this court. Dr. Rizzo, though, said that five doesn't make it substantially probable. In his testimony, he indicated that 12.9% of those who support five reoffend, and he does not believe that rises to the level of much more likely than not or substantially probable for someone who's still defiant to reoffend. With respect to the second argument, the commitment order, the trial court obviously considered Dr. Moyer's testimony in that. Dr. Rizzo testified that he believed that after he reviewed each of the rules at hand, in these cases, there's, I think, 54, 52 rules that are in the space that they follow through with a mayoral review several times with the individual who might be placed on conditional release. Dr. Rizzo believed that a review of those rules and discussing those with Mr. Moyer, he could abide by the rules and that he would be able to successfully be on CR. The infractions were minor at the TBI, and Dr. Rizzo noted that they were minor infractions. He never had an infraction or a ticket, as they call them at DOC, for any type of sexual offense. They were more of the generic minor kind of infractions. Dr. Rizzo said that although he violated a couple of those rules a few times at the TBI, he believed that there's a big difference between violating in a facility and violating in a community. In a facility, the consequences are you remain in the facility. You might lose a privilege or something like that. If you engage with brutal violations in a community, then you lose your liberty. So the consequences are much greater on CR, and after discussing all of that with Mr. Moyer, Dr. Rizzo believed that he could be contained or successfully managed, I believe is the term they use, on conditional release. Further, Dr. Rizzo indicated that the behavior that labels him as a sexually violent person occurred over 30 years ago and that the arrangements in the community would be sufficient and he would be able to do well in them. Now, although Dr. Cruz did not testify at the dispositional hearing during his testimony at trial, he indicated or he testified that Mr. Miller could do treatment while on conditional release. It is actually a bunch of rules, and the rules that they have to follow regarding their treatment, what they have to do, what they can't do, how many times a week they go, where they go. They are picked up and taken to each of these appointments. They miss them or they're used. They are right back at the TBF. But Dr. Cruz indicated that he thought he could do well in treatment at the TBF. He also testified that there was evidence that he had participated in ancillary groups, not the high-phase program at the TBF, but he could be managed on CR with treatment and that he thought he could do well on CR. Finally, Mr. Miller did testify at his dispositional hearing. He did admit that he hadn't engaged in the treatment at the TBF, and he indicated based on a lot of the respondents that are at the TBF that it doesn't get you anywhere, that they're better forever. He told them, he indicated in his testimony on the record on page 47 and 48 that he wouldn't do treatment while on CR. He believed that treatment, based on what he knew about the treatment, would be much better for keeping him on CR and following the straight and narrow path that we had put. In our brief, I'm not requesting that the court re-weigh all the evidence from the trial case. I'm requesting that the court look at all of the evidence and find that, number one, Mr. Miller does not meet the criteria that it is not substantially probable or much more likely than not, based on the evidence of all three experts, that he will re-offend and, therefore, the state failed to prove him or her beyond a reasonable doubt. And, second, if the court does determine that he does meet the criteria, then the trial, that this court remanded his case for him to be placed on conditional liability. No, thank you. No questions. Thank you. Thank you, counsel. Honestly, we'll take the matter under advisement. We will issue an order of due course.